```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


SUNDANCE REHABILITATION CORP. *
                              *
v.                            *
                              *   Civil Action No. WMN-12-153
HERMITAGE HEALTHCARE OF       *
MANOKIN MANOR, LLC et al.     *
                              *
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

## MEMORANDUM AND ORDER

Plaintiff SunDance Rehabilitation Corporation (SunDance) is a Connecticut corporation which is in the business of providing therapy services in nursing homes. According to the Complaint, Defendant Hermitage Healthcare of Manokin Manor, LLC (Manokin Manor) is a Maryland limited liability company that, at all times relevant, owned a skilled nursing facility in Princess Anne, Maryland (the Facility). Defendants Vintage Health Care, LLC and Vintage Nursing Services, LLC (the Vintage Companies) are California limited liability companies that "operated and/or managed the Facility on behalf of Manokin Manor." Compl. ¶ 7.

On or about September 1, 2001, SunDance entered into a written Therapy Services Agreement (the Agreement) with Manokin Manor whereby SunDance agreed to provide certain defined therapy services, including speech, physical, and occupational therapy for the residents and patients of the Facility. SunDance commenced providing those services pursuant to the Agreement

shortly thereafter and continued to do so until June of 2011. SunDance alleges that it fully performed its obligations under the Agreement but, despite repeated demands for payment, Defendants failed to send it payment in full for its services. SunDance alleges that it is currently owed at least $227,920.46.

The Complaint contains four counts. Count I is a breach of contract claim against Defendant Manokin Manor only. Counts II, III, and IV are asserted against all three Defendants and bring claims, respectively, of quantum meruit, unjust enrichment, and "suit on account." Manokin Manor filed an Answer to the Complaint and shortly thereafter all three Defendants moved to dismiss Counts II, III, and IV. ECF No. 7. Defendants contend that there are insufficient factual allegations to satisfy the specificity requirements of the Federal Rules as to these three counts and, furthermore, that these counts are barred by the assertion of a written contract covering the same subject matter.

In <u>Bell Atlantic Corp. v. Twombly</u>, the Supreme Court held that to withstand a motion to dismiss, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." 550 U.S. 554, 570 (2007). Under the plausibility standard, while a complaint need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of

action." Id. at 555.  In other words, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level."  Id.

In Ashcroft v. Iqbal, the Court expanded upon Twombly by explicating the analytical approach to be followed in any Rule 12(b)(6) test to the sufficiency of a complaint.  First, reviewing courts are instructed to identify and segregate out the legal conclusions in the complaint, which, unlike the factual allegations, are "not entitled to the assumption of truth."  Iqbal, 556 U.S. 662, 664 (2009).  Second, a court must determine whether the factual allegations "plausibly suggest an entitlement to relief."  Id. at 681.  The Court advised that the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Indeed, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663.  Finally, the Court characterized the analysis as "context-specific" and advised reviewing courts to draw upon "judicial experience and common sense" in making their determination.  Id. at 663-664.

The Court turns first to Plaintiff's unjust enrichment claim. To establish such a cause of action, a plaintiff must show:

> 1) a benefit conferred upon the defendant by the plaintiff;
>
> 2) an appreciation or knowledge by the defendant of the benefit; and
>
> 3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

Mohiuddin v. Doctors Billing & Mgmt. Solutions, Inc., 9 A.3d 859, 865 (Md. Ct. Spec. App. 2010). SunDance alleges that it provided therapy services for the residents and patients of a facility owned by Manokin Manor and operated by the Vintage Companies. Compl. ¶ 38. SunDance states that it provided those services at the request of Defendants. Id. ¶ 39. As the owner or as the operators of the Facility, each Defendant would have benefited from the provision of those services that are clearly a component of the services that a skilled nursing facility must provide.[1] If Defendants requested the services, they were aware

---

[1] Defendants protest that SunDance asserts in its Opposition that "the 'facility could not function' without Sundance's services and that the 'Facility was able to operate, and generate revenue to all Defendants, as a direct result of Sundance's services,'" Reply at 3 (quoting Opp'n at 6), but that those specific allegations did not appear in the Complaint. The Court, however, can reasonably infer if not take judicial notice of the fact that skilled nursing facilities would need to provide their

4

of the benefit conferred.  Furthermore, SunDance's allegation that it provided the services as requested and yet Defendants refused to pay the fair and reasonable value of the services, Compl. ¶ 41, is sufficient to satisfy the third element of an unjust enrichment claim.

Defendants criticize SunDance for not setting out the specific activities attributable to each Defendant.  Beyond identifying Manokin Manor as the owner of the Facility and the Vintage Companies as the operators of the Facility, the only other Defendant-specific allegation is that the partial payments for SunDance's services came by way of checks from a Manokin Manor bank account signed by an employee of Vintage Companies. Compl. ¶ 16.  In this context and at this stage of the litigation, the Court finds that this is sufficient specification.  Owners or operators of a skilled nursing facility would receive a benefit from the rendering of therapy services for the Facility's residents and each Defendant is alleged to have some role in the payment for those services.

The decisions relied upon by Defendants calling for more specificity are readily distinguishable.  In <u>Lawrie v. The Ginn Companies, LLC</u>, Civ. No. 09-446, 2010 WL 3746725 (M.D. Fla. Sept. 21, 2010), the complaint that was found to have

---

residents and patients with the types of therapy services provided by SunDance.

5

"improperly lumped" defendants was 134 pages long, contained 566 paragraphs and asserted six counts against eleven defendants. The court held in that context that "allegations of 'generalized conduct' against multiple defendants are only proper if the complaint also alleges facts which evoke more than "the mere possibility" that each individual defendant acted unlawfully." Id. at *5.  Similarly, Pixler v. Huff, Civ. No. 11-207, 2011 WL 5597327 (W.D. Ky. Nov. 17, 2011), addressed a complaint against nine defendants in the context of a complex web of various business and corporate entities.  Harris v. Wells Fargo Bank, Civ. No. 11-3279, 2011 WL 6294249 (E.D. Cal. Dec. 13, 2011), is a one page decision denying a temporary restraining order to pro se plaintiffs attempting to stop a foreclosure on their home. After holding that the plaintiffs failed to meet procedural and substantive standards for the issuance of a TRO, the court in the dicta quoted by Defendants noted that the plaintiffs' "allegations are confusing and conclusory, directed generally at multiple Defendants without differentiating between the actions of one defendant and another." Id. at *1.  In contrast, the Complaint in this action involves rather straightforward claims against three entities whose connection with the subject of the complaint is clearly identified.

Defendants also argue that SunDance's unjust enrichment claim should be dismissed because it is inconsistent with

6

SunDance's contract claim. While SunDance would not be permitted to ultimately recover under both theories, the federal rules freely permit pleading alternative theories of recovery, even if inconsistent. Fed. R. Civ. P. 8(d)(3). Where the existence of a contract covering the subject matter is potentially in dispute, pleading alternative contract and quasi-contract claims is a common and acceptable practice. See Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc., 190 F. Supp. 785, 792 (D. Md. 2002) ("'It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails. . . . Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature.'") (quoting Mobil Oil Corp. v. Dade County Esoil Mgmt. Co., Inc., 982 F. Supp. 873 (S.D. Fla. 1997)).

As to SunDance's quantum meruit claims, the Court concludes they should be dismissed. The Maryland Court of Appeals in Mohiuddin explained that a quantum meruit claim may be based either on an implied-in-fact contractual duty or an implied-in-law (quasi-contractual) duty requiring compensation for services rendered. 9 A.2d at 864. A quantum meruit claim based on a quasi-contract (i.e., implied-in-law) is the same as a claim of unjust enrichment, id., and, to the extent that this is what

7

SunDance is asserting in Count II, it would be redundant of Count III and should be dismissed on that ground.[2]

In contrast, quantum meruit claims based on implied-in-fact contracts are actual contract claims: "An implied-in-fact contract is a 'true contract' and 'means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words.' Implied-in-fact contracts are 'dependent on mutual agreement or consent, and on the intention of the parties; and a meeting of the minds is required.'" Id. (quoting Mogavero v. Silverstein, 790 A.2d 43, 52 (Md. Ct. Spec. App. 2002)). To the extent that SunDance is attempting to state a quantum meruit claim based upon an implied-in-fact contract, the claim should still be dismissed. As to the Vintage Companies, there are no allegations in the Complaint that SunDance and the Vintage Companies reached a mutual agreement that the Vintage Companies would pay for the therapy services provided by Sundance. See Mohiuddin, 9 A.3d at 865 (dismissing quantum meruit claim after concluding that complaint did not contain the "critical allegation, to wit, that both parties intended that [the to-be-dismissed defendant] (rather than [the original contracting party]) was required to pay [the plaintiff] for his services"). As to Manokin Manor, the only allegations

---

[2] SunDance implicitly concedes in its Opposition that its unjust enrichment and quantum meruit claims are redundant. Opp'n at 7.

in the Complaint regarding a mutual agreement are those connected with the written Agreement.  Those allegations give no support to the conclusion that there was an implied-in-fact contract, but simply an actual executed contract.

Finally, as to SunDance's "suit on account" claim, Defendants complain that SunDance fails to specify on which type of account – a "running account" or an "account stated" – the claim is premised.  The claim, as pled, is clearly not on an account stated.  Such a claim requires "an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance." Wathen v. Perace, 3 A.2d 486, 491 (Md. 1939).  No allegation of such an agreement is made here.

A running account, in contrast, "is one which is kept to show all transactions between a debtor and creditor, i.e., a continuous record of the entry of charges as well as payments on account."  Mullan Contracting Co. v. Int'l Bus. Mach. Corp., 151 A.2d 906, 911 (Md. 1959).  While questioning what this seldom used cause of action might actually add to SunDance's contract and unjust enrichment claims, the Court finds the Complaint has stated a claim for an action on a running account.  SunDance alleges that it supplied services for which specified charges

would be due, that Defendants made some payments for those services, but despite these partial payments, a balance due to SunDance remains on the account.

Accordingly, it is the 13th day of June, 2012, by the United States District Court for the District of Maryland, ORDERED:

1) That Defendants' Motion to Dismiss, ECF No. 7, is GRANTED in part and DENIED in part in that the motion is GRANTED as to Count II of the Complaint but DENIED as to Counts III and Count IV; and

2) That the Clerk of the Court shall transmit this Memorandum and Order to all counsel of record.

_____/s/_____
William M. Nickerson
Senior United States District Judge